STATE OF NORTH CAROLINA v. RANDY ANSON CULPEPPER AND TREVOR DALE GURGANUS

No. 111

(Filed 27 January 1981)

**Arson § 3; Criminal Law § 50.1— origin of fire — opinion testimony improperly excluded**

> In a prosecution of defendants for conspiring to burn a building and personal property therein, the trial court erred in excluding a witness's testimony as to his opinion that the char pattern on the floor of the second story of the building did not indicate the use of an accelerant and that there was only one origin to the fire, since defendant should have been allowed to offer expert testimony to counter that introduced and relied upon by the State; one defendant's testimony that the condition of the building remained unchanged from the time of the fire until the time the expert witness observed it laid an adequate foundation for the expert testimony; and there was a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial, as the impact of another expert witness's testimony was severely diminished when he admitted that he was not an arson expert and had not had training in the investigation of arson and arson detection.

Justice MEYER did not participate in the consideration or decision of this case.

ON discretionary review pursuant to G.S. 7A-31(a) to review the decision of the Court of Appeals, reported in 47 N.C. App. 633, 267 S.E. 2d 591, finding no error in judgments entered by *Brown, J.*, at the 29 May 1979 Session of PASQUOTANK Superior Court.

Defendants were charged in separate indictments, proper in form, with conspiring with each other to burn a building and with conspiring to burn personal property located within the building. Each defendant was also indicted on counts of burning a building and burning personal property.

The undisputed evidence at trial tended to show that defendants operated a nightclub located in Elizabeth City, North Carolina. The two-story, rented building which housed the nightclub consisted essentially of one large room on the first floor, used as the nightclub, and another large room on the second level, used principally for storage. The first floor had been adapted for nightclub use by the addition of a bar, a dance floor, and bathrooms. The true ceiling of the first floor was twelve to fourteen feet high. The ceilings in the bathrooms were about eight feet high, resulting in a false ceiling and an area above the ceiling in which defendants had

stored paints, paint thinner, brushes, rollers, and other painting apparatus.

About 3:00 a.m. on 6 October 1978, defendants closed the nightclub for the evening and left. Shortly thereafter, the building caught fire and burned, resulting in substantial fire damage.

Defendants were arrested on 1 December 1978. The trial began 29 May 1979. Following verdicts of guilty on all charges, each defendant was sentenced to fifteen years imprisonment for the charge of burning a building, and five years on the charge of burning personal property. The Court of Appeals, in an opinion by Judge Hedrick, Judges Martin (Robert M.) and Martin (Harry C.) concurring, found no error. We granted defendants' petition for discretionary review pursuant to G.S. 7A-31(a) on 15 August 1980.

*Rufus L. Edmisten, Attorney General, by John R. B. Matthis, Special Deputy Attorney General, and Acie L. Ward, Assistant Attorney General, for the State.*

*Twiford, Trimpi, Thompson and Derrick, by C. Everett Thompson, for defendants.*

BRANCH, Chief Justice.

The sole question presented for review is whether the trial court erred in refusing to admit the testimony of defendants' expert witness.

The State contended throughout the trial, and its evidence tended to show, that the fire had three points of origin: the area behind the bar; the men's restroom; and an area on the second floor above the men's restroom. The State's expert witness, Mr. Floyd Douglas Allen, testified that, in his opinion, the fire on the second floor was caused by the ignition of vapors from a flammable liquid which was poured on the floor, "and that this flash fire, in return, ignited the flammable liquids, which in turn ignited the floor."

Defendants contended that the fire originated when a live cigarette was thrown into a large trash can behind the bar. As the fire spread, it ignited cans of paint thinner stored above the false ceiling in the men's restroom and caused them to explode. As a result, the false ceiling burned away, and cans of paint thinner fell to the floor of the restroom. In essence, defendants maintained that the fire began accidentally and had only one point of origin.

State v. Culpepper

In support of their contention, defendants offered the testimony of Mr. Harley June, an expert in the causes of fires. Mr. June was qualified as an expert and, after testifying concerning his inspection of the burned premises, was asked the following question about the second-floor fire:

> Mr. June, do you have an opinion, satisfactory to yourself, based upon your experience and training, as to whether or not and based on your observations of the hole, as to whether or not the charring around that hole you testified about, was caused by the use of an accelerant poured on the floor?

The court sustained the State's objection and permitted defendants to enter into the record what the witness would have responded had he been allowed to testify. Out of the hearing of the jury, Mr. June responded:

> Based on my experience and observations, there was no evidence to indicate an accelerant was used.

Mr. June also would have testified that the fire had only one point of origin.

It is well settled that "an expert in a particular field may give his opinion, based on personal observation or in answer to a properly framed hypothetical question, that a particular event or situation could or could not have produced the result in question." *Teague v. Power Co.*, 258 N.C. 759, 763, 129 S.E. 2d 507, 510 (1963). We hold that it was error not to permit defendant to offer expert testimony to counter that introduced and relied upon by the State. *See State v. Moore*, 262 N.C. 431, 137 S.E. 2d 812 (1964) (reversible error to exclude expert evidence offered to refute State's theory of the origin of the fire).

The Court of Appeals held that there was no error in excluding the challenged testimony since no foundation had been laid. The court noted that Mr. June did not visit the premises until ninety-seven days after the fire. The court then stated that defendants had failed to offer evidence that "the condition of the building as he observed it, and upon which he based his opinion, was substantially the same as it was immediately after the fire." 47 N.C. App. at 635, 267 S.E. 2d at 593. We disagree. Prior to offering the testimony of Mr. June, defendant Gurganus testified as follows:

I had an occasion to go in the building in January of 1979. I went in there with Mr. Harley June. When I went in there with Mr. June, *it had not changed in any way since the fire.* Other than a small amount of cleanup that we had done, that was very minor. The upstairs on the second floor had not altered or changed in any way. (Emphasis added.)

We think that the testimony of defendant Gurganus suffices to lay an adequate foundation for Mr. June's expert testimony.

Even so, the State submits, and the Court of Appeals agreed, that any error in excluding the testimony amounted to harmless error since another expert witness, Mr. Donald Oglesbe, testified substantially in accordance with what Mr. June would have said, had he been permitted to give his opinion. However, on cross-examination, the impact of Mr. Oglesbe's expert testimony was severely diminished when he admitted that he was not an arson expert and had not "had the training in the investigation of arson and arson detection." He further admitted that he had never investigated the premises involved here. Under these cirumstances, we cannot say that there is no "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . . ." G.S. 15A-1443(a).

The decision of the Court of Appeals finding no error in defendants' trial is reversed and the cause is remanded to that court for further remand to the Pasquotank Superior Court for a new trial.

New trial.

Justice MEYER did not participate in the consideration or decision of this case.